UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ERIC HUNTER | ) | CASE NO. 1:13CV2471 |
| | ) | |
| Plaintiff | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | **MEMORANDUM AND OPINION** |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Eric Hunter Supplemental Security Income (SSI). The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in her August 12, 2012 decision in finding that Plaintiff was not disabled because he retained the Residual Functional Capacity (RFC) to perform his past relevant work as a cleaner at the medium exertional level with non-exertional limitations, and could perform other jobs that exist in significant numbers in the national economy, such as kitchen worker, packer, and laborer (Tr. 21-42). The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

**I.     PROCEDURAL HISTORY**

Plaintiff, Eric Hunter, filed his application for SSI on October 13, 2010, alleging he became disabled on September 1, 2008 (Tr. 231-236). Plaintiff's application was denied initially and on

reconsideration (Tr. 113-115, 120-122).  Plaintiff requested a hearing before an ALJ, and, on July 11, 2012, a hearing was held where Plaintiff appeared with counsel and testified before an ALJ and a Vocational Expert (VE) also testified (Tr. 43-90).

On August 14, 2012, the ALJ issued her decision, finding Plaintiff not to be disabled (Tr. 21-42).  Plaintiff requested a review before the Appeals Council, and the Appeals Council denied Plaintiff's request for review (Tr. 1-6).  Therefore, Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Section 405(g).

**II.     STATEMENT OF FACTS**

Plaintiff was a "younger individual," thirty years old in January 2011, the month his disability application was filed, having been born on September 17, 1980 (Tr. 36).  Plaintiff received special education services beginning in February of 1987 (at age six), when he was identified as specific learning disabled (Tr. 338).  He dropped out of school in the seventh grade year, but received his diploma in 2002 through homeschooling (Tr. 54, 363).  He attended college at night for one to one and a half years, but dropped out (Tr. 373).  He worked in a call center (Tr. 282).  Plaintiff has past relevant work experience as a landscape laborer and cleaner (Tr. 35).

**III.    SUMMARY OF MEDICAL EVIDENCE**

In 2011, Plaintiff began treatment at Signature Health (Tr. 371). On February 24, 2011, Patricia Janis, a licensed social worker, indicated that Plaintiff had improved affect, good eye contact, calm, and pleasant (Tr. 361).  Plaintiff reported that he cares for his children's needs daily and helps with household chores (Tr. 361). He said that he works out with weights and punching bag, and that

he is a tenth degree black belt in Taekwondo and Jui Jitsui (Tr. 361). Plaintiff's therapist recommended that he consider internet/personal computer use at the library, per his information technology interests (Tr. 361). She also recommended stress management versus isolation at home (Tr. 361).

On psychiatric evaluation with Sylvester Smarty, M.D., Plaintiff reported that he had never received mental health treatment as an adult (Tr. 372). He stated that he has never been hospitalized psychiatrically (Tr. 373). Plaintiff told Dr. Smarty that he attended college at night for one and a half years, but dropped out (Tr. 373).

On mental stress examination, Plaintiff appeared properly dressed, but was disheveled and poorly groomed (Tr. 373). He was alert and oriented to time, place, and person (Tr. 373). His speech was spontaneous with normal rate, volume, and production (Tr. 373). His content of speech was clear, concise, and logical (Tr. 373). There was no evidence of psychosis (Tr. 373). Plaintiff denied suicidal or homicidal ideations (Tr. 373). His insight and judgment appeared adequate (Tr. 373). Dr. Smarty prescribed pharmacotherapy and psychotherapy (Tr. 374).

On March 29, 2012, Dr. Smarty completed a Medical Source Statement: Patient's Mental Capacity form (Tr. 448-449). On this check-off form, Dr. Smarty indicated that Plaintiff had "poor or none" ability in twelve out of twelve areas of occupational adjustments (Tr. 448-449). Dr. Smarty indicated that Plaintiff had poor or none ability to understand, remember, and carry out complex job instructions; fair ability to understand, remember, and carry out detailed, but not complex job instructions; and good ability to understand, remember, and carry out simple job instructions (Tr. 449). According to Dr. Smarty, Plaintiff had good ability to maintain appearance, and poor or none ability in all other areas of personal and social adjustment (Tr. 449).

3

On April 27, 2011, J. Joseph Konieczny, Ph.D. performed a consultative examination of Plaintiff (Tr. 362-369). When questioned as to his disability, Plaintiff responded, "ADHD, depression, and the physical." On mental status examination, Plaintiff's appearance and grooming seemed adequate (Tr. 364). Although somewhat anxious, Plaintiff was pleasant and cooperative (Tr. 364). He responded readily to all questions posed of him (Tr. 364). He showed no indications of undue impulsivity (Tr. 364). His level of motivation and participation throughout the interview seemed adequate (Tr. 364).

Overall, Plaintiff seemed quite capable of expressing himself in a clear and coherent manner (Tr. 364). He maintained appropriate eye contact (Tr. 365). He reported difficulties with sleep, diminished appetite, and recent feelings of depression (Tr. 365). No delusional material was elicited during the evaluation (Tr. 365). He was oriented to person, place, and time (Tr. 365). His ability to concentrate and attend to tasks showed no indications of impairment (Tr. 365). He did have some difficulty performing a serial three subtraction task, making at least one error in his response (Tr. 365). He was able to recall two of three objects after a period of five minutes had elapsed (Tr. 365). His recall for digits was in the low-average range (Tr. 365). He showed moderate deficits in his ability to perform logical abstract reasoning (Tr. 365). Plaintiff's insight seemed fair to poor, and he showed marked deficits in his overall level of judgment (Tr. 365). On the Wechsler Adult Intelligence Scale-IV (WAIS-IV), Plaintiff scored a full-scale IQ of sixty-seven, which placed him the extremely low range of adult intellectual functioning (Tr. 366).

Dr. Konieczny diagnosed anxiety disorder, not otherwise specified; personality disorder, not otherwise specified (with anti-social features); and borderline intellectual functioning (Tr. 366-367). Dr. Konieczny stated that Plaintiff exhibited symptoms of both anxiety and mild depression, and noted Plaintiff's past history of significant involvement in the juvenile justice system (Tr. 366). Dr.

4

Konieczny also noted that, although results of the intellectual testing place Plaintiff in the range that could suggest a diagnosis of mild mental retardation, Plaintiff's performance on all of the index areas extended beyond that which would be considered typical for an individual with such a diagnosis (Tr. 366). Dr. Konieczny concluded that a diagnosis of borderline intellectual functioning would be more appropriate than a diagnosis of mild mental retardation (Tr. 366).

Dr. Konieczny opined that Plaintiff had no impairment in the ability to concentrate and attend to tasks (Tr. 366). His ability to understand and follow directions showed no indication of impairment (Tr. 366). His ability to withstand stress and pressure in the work setting shows indications of market impairment, and would appear to reflect his personality disorder and anxiety (Tr. 366). Also, Plaintiff's ability to relate to others in the work setting and to deal with the general public shows indications of moderate impairment (Tr. 366). His insight into his current situation seemed fair to poor (Tr. 366). He showed mild deficits in his awareness of rules of social judgment and conformity (Tr. 366). He showed marked deficits in his overall level of judgment (Tr. 366). Dr. Konieczny opined that Plaintiff's overall level of functioning was at a reduced level of efficacy (Tr. 366). He assigned a Global Assessment of Functioning (GAF) rating of fifty (Tr. 366).

On May 11, 2011, Kristen Haskins, Psy.D., a state agency psychological consultant, reviewed the record, and determined that Plaintiff did not meet Listing 12.05 (Mental Retardation) (Tr. 94-95). Dr. Haskins opined that Plaintiff could perform simple, repetitive tasks in situations that do not require strict production quotas or deadlines or frequent changes in job duties or routines (Tr. 97).

On September 9, 2011, Karla Voyten, Ph.D. reviewed the record, and determined that Plaintiff did not meet Listing 12.05 (Tr. 106-107). Dr. Voyten opined that Plaintiff could perform simple, repetitive tasks in situations that do not require strict production quotas or deadlines or frequent changes in job duties or routines (Tr. 108-109).

5

## IV.  SUMMARY OF TESTIMONY

At the administrative hearing, Plaintiff testified that he completed his education through home schooling (Tr. 54). He lives with his fiancé of seven years and their three children (Tr. 54-55). Plaintiff also has a fourth child, from a different relationship (Tr. 55). He was imprisoned for eight months for failure to make child support payments (Tr. 57).

When asked why he could not work, Plaintiff testified that he "can't keep a straight thought most of the time." (Tr. 65). Over the course of the hearing, Plaintiff provided detailed responses to questioning (Tr. 43-90). In explaining why he was imprisoned for eight months for failure to pay child support, Plaintiff testified that "somehow [his] name got put on an emergency ride-out list" (Tr. 57). He testified that his lawyer "talked to the prosecutor, and the judge sentenced [him] in prison, in a nutshell" (Tr. 58). Plaintiff testified that his lawyer "fought for some type of treatment thing, facility, or halfway house, and they sentenced [him] to prison" (Tr. 59). Plaintiff used terms such as an "agoraphobe" and "jaundice," and explained the definition of the words (Tr. 60, 65-66). He testified about his medical condition–that he was diagnosed with "hepatitis," "attention deficit disorder," bipolar," and "mood disorder" (Tr. 66). He testified that his medications included "Wellbutrin," "Buspar," and "Avience," "which is a 'sleeping medication'" (Tr. 70). Plaintiff testified Dr. Seradakas first started talking to him about Interferon treatments when he was seventeen years old (Tr. 78). The Doctor said that Plaintiff was not ready for treatments because he was on drugs at the time, and the Doctor did not want to "put [Plaintiff] through any more strain." Plaintiff testified that another "specialist," a "liver doctor," discussed Interferon treatments with him before he went to prison (Tr. 79).

Thereafter, the vocational expert testified that Plaintiff had past relevant work, consisting of employment as a landscaper (heavy and unskilled), cleaner (medium and unskilled), and a reduced

6

skill level of telephone solicitor (Tr. 82-83). The VE then opined, in response to a hypothetical question posed by the ALJ which was consistent with the Judge's findings regarding Plaintiff's past relevant work, that Plaintiff could perform past relevant work and other work, such as kitchen worker (600,000 jobs nationally), packer (500,000 jobs nationally), and laborer (800,000 jobs nationally) (Tr. 85-87). The vocational expert then responded to Plaintiff's counsel that if the individual was off task fifteen percent of the day, competitive work would be precluded (Tr. 88).

## V.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to supplemental security income. These steps are:

1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (Sections 20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2.  An individual who does not have a "severe impairment" will not be found to be "disabled" (Sections 20 C.F.R. 404.1520(c)and 416.920(c)(1992);

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* Sections 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in Sections20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (Sections 20 C.F.R. 404.1520(d)  and 416.920(d) (1992);

4.  If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (Sections 20 C.F.R. 404.1520(e) and 416.920(e) (1992);

5.  If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (Sections 20 C.F.R. 404.1520(f) and  416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering his age, education, past work experience and residual functional capacity.  *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

## VI. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. Section 405(g).  Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards.  *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990).  The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion.  *See, Walters v. Commissioner of Social Security,* 127 F.3d 525., 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla of evidence, but less than a preponderance.  *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971).  It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion.  *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997).  Substantiality is based upon the record taken as a whole. *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

**VII.** **ANALYSIS**

Plaintiff raises three issues:

A. WHETHER THE ALJ ERRED IN HER ANALYSIS OF LISTING 12.05C CONCERNING THE ASSESSMENT OF PLAINTIFF'S IQ VALIDITY AND ADAPTIVE FUNCTIONING.

B. WHETHER THE ALJ'S DETERMINATION OF PLAINTIFF'S MENTAL RESIDUAL FUNCTIONAL CAPACITY IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

C. WHETHER THE VOCATIONAL EXPERT'S TESTIMONY IS SUFFICIENT TO SATISFY THE COMMISSIONER'S BURDEN AT STEP FIVE OF THE SEQUENTIAL PROCESS.

At the first step of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity (Tr. 26, Finding No. 2). The ALJ next found that Plaintiff had borderline intellectual functioning, anxiety, and depression–impairments that were "severe," but, considered singly and in combination, did not meet or medically equal the criteria of Listing 12.05 (Tr. 26-27, Findings No. 3 and 4). Plaintiff had the RFC to perform a full range of work at the medium exertional level, but had the following non-exertional limitations: Plaintiff can understand, remember, and carry out instructions consistent with performing work at SVP1 and SVP2. He can interact on a superficial basis with the general public, co-workers, and supervisors. He is limited to work that does not require strict production quotas or deadlines. He can adjust to routine, minor changes. He can maintain concentration, persistence, and pace for two hours at a time over a normal eight-hour workday and workweek, and at the two-hour mark will require a five-minute break, resulting in a total of twenty minutes off task for the entire day (Tr. 29, Finding No. 4). Based on the VE's testimony in response to a hypothetical question with these limitations, the ALJ found that Plaintiff would be capable of performing his relevant work as a cleaner and certain other unskilled jobs in the national

economy (Tr. 84-87). Therefore, the ALJ found Plaintiff not disabled, and, hence, not entitled to SSI.

The Court finds that substantial evidence supports the ALJ's finding that Plaintiff did not meet any section of the Listings, including Listing 12.05C. 20 C.F.R. pt. 404, subpt. P., app. 1. To be found presumptively disabled, a claimant must show that <u>all</u> of the criteria for a listing have been met. 20 C.F.R. Section 416.925(c)(3); *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). An impairment that meets only some of the criteria for a listed impairment, "no matter how severely, does not qualify." *Id.* The Plaintiff has the burden of proof to present evidence that an impairment or combination of impairments meets or equals a listed impairment by presenting medical findings equal in severity to <u>all</u> of the criteria for the one most similar listed impairment. 20 C.F.R. Section 416.926; *Zebley*, 493 U.S. at 531.

> In order to be presumed disabled under Listing 12.05, a claimant must establish the following:
>
> 12.05 *Mental Retardation and Autism*: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior <u>initially manifested during the developmental period (before age 22)</u>. Autism is a pervasive developmental disorder characterized by a social and significant communication deficits originating in the developmental period. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

Plaintiff's argument that he meets Listing 12.05C is not supported by substantial evidence. In order to meet the criteria of Listing 12.05C, a claimant must have a valid verbal, performance, or full-scale IQ of sixty through seventy and a physical or other mental impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. pt. 404, subpt. P, app. 1, Section 12.05C (2013).

The Court finds that the ALJ correctly determined that Plaintiff did not meet Listing 12.05C. Plaintiff did not have a valid verbal, performance, or full-scale IQ of sixty through seventy (Tr. 29). While noting the IQ score of sixty-seven reported by Dr. Konieczny in April 2011, the ALJ correctly

found that Plaintiff did not have a valid verbal, performance, or full-scale IQ score of sixty to seventy (Tr. 29, 363). Dr. Konieczny concluded that Plaintiff's performance on all of the index areas of the IQ test extended beyond that which would be considered typical for someone with mild mental retardation (Tr. 366). Hence, Dr. Konieczny determined that a diagnosis of borderline intellectual functioning would be more appropriate than a diagnosis of mild mental retardation (Tr. 366). Furthermore, the ALJ concluded that, although Plaintiff has also been diagnosed with anxiety and personality disorder, these conditions do not impose significant work-related functions, to the extent that Plaintiff is unable to perform any work activity (Tr. 29).

The ALJ also found that the step-three determination was supported by the opinions of the two state agency physicians who reviewed the record. Drs. Haskins and Voyten found that Plaintiff's impairments did not meet or equal the requirements of any listed impairment, and, instead, both opined that Plaintiff could perform simple, routine, repetitive work (Tr. 94-95, 106-107). Based upon substantial evidence supporting these opinions, the ALJ correctly concurred with the opinions of Drs. Haskins and Voyten at step three (Tr. 26-29). *See* 20 C.F.R. Section 416.927(f)(2)(I).

The guidelines for assessing mental disorders under the Act are contained in Section 12.00 of 20 C.F.R. pt. 404, subpt. P, app. 1. The structure for Listing 12.05 (mental retardation) is different than that of the other mental disorders listings. 20 C.F.R. pt. 404, subpt. P, app. 1, Section 12.00(A). The Agency interprets Listing 12.05C to require that a claimant "must have mental retardation that satisfies the criteria in the introductory paragraph of those listings <u>in addition to</u> the criteria in one of the paragraphs that follows the capsule definition; that is, listing 12.05 . . . C." 71 Fed. Reg. 10419-01, 2006 WL 467856 (Mar. 1, 2006). Therefore, the Commissioner's regulations, as well as the law of this Circuit, require a claimant to satisfy the capsule definition of Listing 12.05 in addition to the requirements of subsection 12.05C.

11

In addition, Plaintiff has failed to show deficits in adaptive functioning to satisfy all of the requirements of the listing. "Adaptive functioning" refers to "how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." *See*, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 42 (4th Ed. text rev., 2000). By definition, mental retardation includes three elements: (1) significantly sub-average general intellectual functioning, (2) deficits in adaptive functioning, and (3) onset during the developmental years. *Id*. at 41-47. Factors such as the claimant's life activities and employment history must be considered and weighed properly in the ALJ's analysis. *See, Adkins v. Astrue*, 226 F. App'x 600, 605 (7th Cir. 2007).

The regulations describe that adaptive activities of daily living include "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. pt. 404, subpt. P, app. 1, Section 12.00C(1). Impaired social functioning may be exhibited by, "for example, a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation." *Id*. at Section 12.00C(2). Other social functioning abilities may be considered, including cooperative behaviors, functioning in work situations, and responding appropriately to persons in authority. *Id.* The DSM-IV-TR evaluates deficits in adaptive functioning in the areas of communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. SDM-IV-TR at 41.

This Court finds that Plaintiff did not demonstrate deficits in adaptive functioning, since he had a long work history and engaged in daily activities (including driving, shopping, and working

12

around his house), and, despite learning disabilities and poor marks in special education classes, his work history suggested that his social and interpersonal skills were strong enough for him to function in certain work environments. Here, Plaintiff graduated from high school while taking special education course work, could drive, communicate, do self-care and instrumental activities of daily living, and had regular contact with family members. In addition, Plaintiff had a history of performing gainful activity involving semi-skilled work, lived independently, could cook, could shop, and could do laundry, and had a diagnosis of borderline intellectual functioning. In the context of mental retardation, an ability to hold a job is useful in determining the individual's ability or inability to function in a work setting.

In this case, although Plaintiff was placed in special education and dropped out of school in the seventh grade, he received his diploma in 2002 through homeschooling (Tr. 54, 363). He attended college at night for one to one and a half years, but dropped out (Tr. 373). He worked in a call center (Tr. 282). Plaintiff has past relevant work experience as a landscaper, laborer, and cleaner (Tr. 35).

Plaintiff cares for his children's needs daily and helps with household chores (Tr. 361). He works out with weights and a punching bag, and reported that he is a tenth-degree black belt in Taekwondo and Jiu Jitsu (Tr. 361). Plaintiff's therapist recommended that he consider internet/personal computer use at the library, after Plaintiff expressed interest in information technology (Tr. 361).

When asked why he could not work, Plaintiff testified that he "can't keep a straight thought most of the time" (Tr. 65). However, during the hearing, Plaintiff gave responses to questioning (Tr. 43-90). In explaining why he was imprisoned for eight months for failure to pay child support, Plaintiff testified that "somehow [his] name got put on an emergency ride-out list" (Tr. 57). He testified that his lawyer "talked to the prosecutor, and the judge sentenced [him] in prison, in a nutshell" (Tr. 58). He testified that his lawyer "fought for some type of treatment thing, facility, or

13

halfway house, and they sentenced [Plaintiff] to prison" (Tr. 59). Plaintiff used terms such as "agoraphobe" and "jaundice," and explained the definition of the words (Tr. 60, 65-66). He testified about his medical condition – that he was diagnosed with "hepatitis," "attention deficit disorder," "bipolar," and "mood disorder" (Tr. 66).  He testified that his medications included "Wellbutrin," "Buspar," and "Avience," which is a "sleeping medication" (Tr. 70). Plaintiff testified Dr. Seradakas first started talking to him about Interferon treatments when he was seventeen years old (Tr. 78).  The Doctor said that Plaintiff was not ready for treatments because he was on drugs at the time, and the Doctor did not want to "put [Plaintiff] through any more strain."  Plaintiff testified that another "specialist," a "liver doctor," discussed Interferon treatments with him before he went to prison (Tr. 79).

The above evidence indicates that Plaintiff has not demonstrated deficits in adaptive functioning as set out in the regulations.  Therefore, this Court finds that the substantial evidence of record supports the ALJ's decision that Plaintiff did not have deficits in adaptive functioning that satisfied Listing 12.05C.

Plaintiff does not challenge the physical RFC (Pl.'s Br. at 12-14).  He argues that the ALJ's mental RFC does not capture the limitations identified by Dr. Konieczny and the poor or no ability in most areas of work-related functioning as identified by Dr. Smarty (Pl.'s Br. at 12-14).  However, the determination of disability is a legal issue that is reserved for the Commissioner.  20 C.F.R. Section 416.903.

Here, Dr. Konieczny opined that Plaintiff had no impairment in the ability to concentrate, to attend to tasks, and to understand and follow directions; moderate impairment in the ability to relate to others in the work setting and to deal with the general public; and marked impairment in the ability to withstand stress and pressure in the work setting (Tr. 32, 366).  Based upon the record, the ALJ gave some weight to Dr. Konieczny's opinion (Tr. 32).   Nevertheless, the ALJ did not give full

14

weight to Dr. Konieczny's opinion that Plaintiff had marked evidence to support such a finding (Tr. 32). Furthermore, the ALJ found that Plaintiff had moderate difficulties with regard to concentration, persistence or pace, a limitation even more restrictive than found by Dr. Konieczny (Tr. 32, 366).

The ALJ gave little weight to Dr. Smarty's opinion (Tr. 31). Dr. Smarty evaluated Plaintiff on only one occasion, on May 9, 2011, and Plaintiff did not seek additional treatment with Dr. Smarty or any other mental health professional (Tr. 31). In addition, Dr. Smarty relied heavily on Plaintiff's subjective report of symptoms and limitations, and seems to have most accepted as true what Plaintiff reported (Tr. 31). Nevertheless, the record establishes valid reasons for questioning Plaintiff's credibility (Tr. 31). Also, Plaintiff's opinion on the check-off form is conclusory and provides no explanation (Tr. 448-449). Since the ALJ provided valid reasons for the weight assigned to the opinions of Dr. Konieczny and Dr. Smarty, the Court finds that substantial evidence supports the Commissioner's decision.

The ALJ gave greater weight to the opinions of Dr. Haskins and Dr. Voyten (Tr. 32, 97, 108-109). The ALJ determined that Plaintiff is more limited in his ability to maintain concentration, persistence, and pace, and would require a five-minute break every two hours (Tr. 32). Based upon this evidence, the ALJ correctly determined that Plaintiff did not have functional limitations that were severe enough to preclude Plaintiff's performance of all substantial gainful activity, and, therefore, he is not disabled.

After determining Plaintiff's RFC, the ALJ considered whether Plaintiff could perform his past relevant (Tr. 35-36). The ALJ compared Plaintiff's RFC with the demands of his past relevant work (Tr. 35-36). Based upon VE testimony, the ALJ correctly concluded that Plaintiff's RFC did not prevent him from performing his past relevant work as a cleaner (Tr. 35-36, 86-87). Hence, it was not necessary for the ALJ to evaluate this case beyond step four of the sequential evaluation process.

Furthermore, the ALJ also relied on VE testimony to determine that Plaintiff could perform a significant number of other jobs despite his established limitations, and, therefore, he was not disabled within the meaning of the Act during the relevant period (Tr. 36-37, 86-87).

At the hearing, the ALJ asked the VE to consider Plaintiff's established limitations (Tr. 86-87). In response, the VE testified that such an individual could perform other work, including the occupations of kitchen worker, packer, and laborer (Tr. 86-87).

Because the ALJ presented Plaintiff's established limitations to the VE, the ALJ correctly relied upon the VE's testimony as substantial evidence. The Commissioner has shown that substantial evidence establishes that other work can be performed by Plaintiff between January 10, 2011, the date his SSI application was filed, and August 14, 2012, her final decision.

## **VIII. CONCLUSION**

Based upon a review of the record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional capacity (RFC) to perform his past relevant work as a cleaner, which is at the medium level with non-exertional limitations, and could also perform other jobs that exist in significant numbers in the national economy. Therefore, Plaintiff was not disabled, and, hence, he is not entitled to SSI.

Dated: November 20, 2014         */s/George J. Limbert*
                                              GEORGE J. LIMBERT
                                              UNITED STATES MAGISTRATE JUDGE